Chief Justice Bibb
delivered the Opinion of the Court.
On the 13th March, 1817, Wm.. T. Bush assigned to Robert Rodes, three notes on Gid-. dings, for six hundred dollars each, bearing date on the 16th December, 1815; the one due 15th- December, 1818; the second due 16th. December, 1819; the third due 16th December, 1820. Bush took from Rodes a writing obliging him,to. return those notes if Bush- paid to Rodes the- sum of twelve-hundred and sixteen dollars, within one year from the 13th March, 1817. The-transaction by which Rodes. acquired the assignment of thesc-notes, and agreed to. return them, was an advance of a sum to B.ush, which, with the interest thereon, at the rate of fifteen per centum for the year added together, amounted to the said sum. of $1216. Rodes collected of Giddings the two notes first falling due, and one hundred and eighty-one dollars part of the last, amounting to $1380; and the executors of Rodes put this last note in suit, against Giddings, had judgment, execution and a replevin bond, founded on that judgment and execution, and were proceeding to collect the balance; whereupon Wm. T. Bush, in July, 1823, exhibited his bill against Rodes’ executors, and against Giddings, and. obtained an injune *468 tion staying the collection of the money upon the replevin bond. The bill charges'the transaction fis usurious, that it was a loan and security for the loan, at the usury of fifteen per cent as aforesaid between Rodes and Bush, claiming to have refunded to him, out of the proceeds of the three notes of Giddings, the excess above $1216; the legal interest.
Decree of Be oji'cuit court.
Answer of the executors of Rodes.
Limitation.
Upon the hearing, the court decreed that the executors of Rodes pay to complainant fifty-nine dollars forty-seven cents, (being the excess actually collected of Giddings, above the sum of $1216, and interest from the time it was to have been paid by Busk to redeem the notes) that the executors be perpetually enj oined from proceeding on their judgment at law against Giddings, except for the costs of that suit at law, and that they pay the complainant his costs in chancery; and as to Giddings, a decree was pronounced, ordering him to pay over to the complainant, Bush, the uncollected balance, of principal and interest, due on the replevin bond.
From the decree against the executors, they alone appealed.
By the answer of the executors they insist that the transaction between Bush and their testator was a conditional sale of the notes, to be void if Bush paid the sum of $¡1216, within the year, which he had wholly failed to do. The answers do not pretend that Rodes advanced to Bush, the sum of $1216; on tiic contrary, they expressly declare, “what amount their testator paid for the assignment of said notes, the defendant is unable now to state. But insists that the transaction between the complainant and the said Robert Rodes, was a conditional sale of said notes to become absolute, in case the complainant should fail to pay the sum of $1216, within twelve months from the date of said memorandum.” They suggest that equity has not cognizance of the matters of the bill.
They rely also on the statute of limitations, as a bar to the relief sought; that the right of redemption, if it existed at all, should be'limited to five years from the 18th March, 1818.
Proofs.
Bush obtainS1®57 ami ass¡„.net| him good gj 800,"xml took his obhgation for bo°rotnrnodt0 on condition B. paid him ^f^nionths otherwise ’ not: field to be a 2lear., casco usa”'
The proof is decisive, that Rodes advanced to Bush only so much, as together with fifteen per centum thereon, for the year, produced the sum of twelve hundred and sixteen dollars; (that is, advanced to Bush not more than $1057 40.)
But it is said this was a conditional sale of the notes, and not a pledge and security for money advanced and loaned on usurious interest. It is not pretended that Rodes took the notes without Bush’s guarantee of the solvency of Giddings. Bush, by his assignment, Stood as security for ultimate payment by Giddings. It is not pretended' that Giddings was in doubtful circumstances, or that Rodes risqued the circumstances and solvency of the obligor in those notes. He did not purchase the notes as a commodity in market. They were themselves but securities,' or documents for money; these securities Rodes received, with the farther security by the endorsement of Bush. But what is this which is called by the executors, a conditional sale? For $1057 40 cents, Rodes acquired securities for $1800. Conditioned, however, that Bush might have back these securities, if be should return, pot the principal of $1057 40 cents, at the end of one year, but the principal with fifteen per centum thereon. For this forbearance for one year, Rodes secured fifteen per centum, at least, for interest and profit. The security of Gidding’s bonds was backed, and assured by Bush’s endorsement, so that Busb was, at all events, bound personally to return principal and legal interest, on the sum advanced by Rodes, even if Giddings did not pay it. it is a mere cloak to bide the usury of fifteen per centum, in case Bush should repay in a year. But if Bush did not repay in a year, then the usury would be more extravagant, provided Rodes shall be permitted to retain $1800, for the advance of $1057 40 cents. Rodes' advanced his money, retaining the responsibility of the receiver to return him his principal and interest at all events; but as to the fifteen per centum, Bush must pay it, and pay it punctually, and to a day, or forfeit $584, over and above principal and usury. If usury, at the rate of fifteen per centum, can he secured and retained by annex *470 ing to the non payment of it a penalty like the present, under cloak of a conditional sale, the statute against, usury would become a dead letter. Disguised, as this transaction is attempted to he, it yet shows the device to cover the unlawful interest and gain of fifteen per centum for the forbearance for one year.
Jurisdiction of equity to prevent the collection of usurious interest, order its repayment, and to relieve aliainst forfeitures.
Limitation to pay money received for usury is five years, to be computed from the receipt of the money.
in a. bill by ojio who bad boiTowed at usury, and us-signed a promissory note on auother, to re-the usnrer the excess he had collected pñncipal'and legal interest, and to have judgment the usurer had recoveredforthe balance due on the assigned note, neinote^orhis surety in his replevin ’.j11®’,10' ties, if they acquiesce in ^Thimisurcr cannot assign íor error, that judgment are not parties— f°déíod°toS pay the borrower, in^ure^in*10 whoso name the judgment Vor, it would avail,
*470 Considering it as a case of usury, it appertains to the jurisdiction of a court of equity, as well to compel the lender to disgorge that excess which he has too greedily devoured, as to prevent him from satiating the cravings of an inordinate appetite. It belongs to the equitable jurisdiction of a court of chancery, to relieve against unreasonable and uncoilscientious penalties and forfeitures. The relief against the penalty of a bond, forfeited by non-payment of the sum mentioned in the condition by the day specified, is a familiar, long used subject of equitable jurisdiction. So also, of relief against other penalties; as that of six per cent interest, inflicted for nonpayment by the day, of a principal, hearing four per cent interest. To relieve against a penalty of eighteen hundred dollars,, for nonpayment, of twelve hundred and sixteen dollars, compounded of principal and usury, at fifteen per cent, by the day specified, belongs also to the powers and jurisdiction of a court of equity. The objection to the jurisdiction of the court cannot be sustained.
The limitation to a suit to recover back the excess paid upon an usurious contract, begins to run and to be accounted from the time of the actual payment and receipt, not from the time when .it should have been paid by the agreement. The sum of $'59 47 cents, decreed against the executors, was received and collected on the third boixd of Giddings, not by anticipation neither, but after the bond fell due; it did not fall due xmtil 16th December, 1820; the bill was filed in July 1823,, within less than five years.
As to the residue of the sum decreed in favor of Bush,-the executors are enjoined from collecting it of Giddings; they have not received it; the injunction granted at the institution of the suit, and per *471 petuated by tbe final decree, has stopped that sum in transitu, and ordered payment to the complainant, instead of to the defendant. There is, therefore, no bar by limitation of time, to the relief and granted.
It is objected in this court, that the proper parties were not brought before the court below. • This objection is predicated upon the facts, that Giddings was not served with process, and has never answered nor appeared, although named as a party in the bill. The clerk certifies that the process issued, has never been returned. Was Giddings, or his surety in the replevin bond, a necessary party to the subject matter of the complaint, and relief sought by Bush against the executors of Rodes? The money due and uncollected from Giddings, was prayed to be stayed and enjoined, until the court a v «/ j j should hear the cause, and decide whether the complainant or the defendants, executors of Rodes were entitled to have it. So far as Giddings had paid, that payment is by the bill, stated and acknowledged as well made, as to the balance unpaid, the only question raised by the bill or answer, is, whether Bush or Rodes’ executors shall have it. Giddings is but the stakeholder, having no interest m the controversy between Bush and the executors of Rodes. If the hill had not named Giddings as a defendant, there would have been no objection for want of necessary parties. It was as proper to enjoin the executors from proceeding to collect tiie money of Giddings without making him a party, as by making him a party. If the court had decreed that the executors should assign over to Bush the uncollected balance duo on the replevin bond, it could have been no objection to such decree, that Giddings was no party, Tiie omission to serve Giddings with process leaves hirn, (as he has neither answered nor appeared,) just as if he had not been named as a party. If the complainant was under no necessity to make him a party; he was under no necessity to serve him with process after naming him as a party in the hill; he was at liberty to drop lnm at any stage of the procccding. If Giddings shall hereaitcr complain of the decree rendered against him, because he ivas *472 not a party to the proceeding, by process served, nor by appearance, the decree against Giddings in favor of Bush as now made, could not stand, unless the process shall be found and returned as executed-But the decree against Giddings is separate and distinct from that against the executors. The decree against Rodes’ executors, is the only one appealed from; Giddings has not appealed nor complained; Rodes’ executors would not be proper parties to a writ of error by Giddings. So that the controversy between Bush and Rodes’ executors, is as completely and as effectually within the power of the court for final adjudication without disturbance hereafter, by any party interested in the subject matter of that controversy, as if Giddings and his sureties in replevin bond were also before the court. To have made Giddings and his sureties, parties, would have been an act of abundant caution and auxiliary means, against a disobedience to the injunction; but they were not parties necessary to the complete and final adjudication of the question of right, between the complainant Bush, and the defendants, the executors of Rodes. Giddings was no more a necessary party, than the Register of the land office would he in a caveat between the claimants upon two conflicting surveys unpatented; or the sheriff to a bill of injunction between the debt- or and creditor, named in the execution put into his hands.
Petition for ; ru-hearing.
It is therefore ordered and decreed, that the decree of the circuit, in favor of the complainant Bush, which has been appealed from by the defendants, the executors of Rodes, bo affirmed, with ten per cent damages on the sum of $59 47.
Appellants to pay to appellee his costs.